## Commonwealth v. Sykes Brothers, Inc.

*Frank A. Sinon,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for Commonwealth.

*Scholl & Dougherty,* for appellant.

RICHARDS, P. J., specially presiding, May 25, 1942. —This case comes before us on appeal by defendant from the settlement of its capital stock tax for the year 1936. A stipulation was filed providing for trial without a jury. The questions involved are: (1) The actual value of defendant's capital stock; and (2) the propriety of including the value of imported wool in the taxable assets.

The report shows that the officers of the company valued the capital stock at $468,000, which is the par value thereof. Land, fixtures, and buildings are reported at $71,000. Inventories are carried at $366,000, book value, and $329,000, actual value. Accounts receivable are $120,000, book value, and $111,000, actual value. Sales amounted to $1,750,000, net earnings $94,000 and dividends $92,000. The actual value of assets, less liabilities, is stated to be $547,000.

Defendant contends that there is a presumption that the value of the capital stock as fixed by its officers is correct, and that the burden of proving otherwise is upon the Commonwealth. It is conceded that this is the general rule, but that an exception occurs when the officers have ignored the legal requirements relating to valuation: Commonwealth v. Dunkard Valley Oil & Gas Co., 41 Dauph. 164, 167. The Commonwealth contends that, since the officers appraised the capital stock at precisely the par value, it is patent that they ignored

the factors which the law requires should be considered. It seems to us that there is some force to this argument, so that we will rely not upon a presumption but upon consideration of the whole testimony.

So far as land, buildings, and equipment are concerned, the Commonwealth, inferentially at least, questions the adequacy of the valuation. This seems to be predicated upon the theory that a plant which produces goods sold at $1,750,000 must be worth more than $71,000. However, the Commonwealth produced no evidence to show the value of the plant. In the absence thereof we are convinced that we should not resort to purely speculative considerations but should accept the figures of the officers as set forth in their report.

There is testimony that the accounts receivable were collected in full. We, therefore, determine their value to be $120,000 and not $111,000.

The Commonwealth contends that the inventories should be valued at $366,000, rather than at $329,000, the depreciated value. This is based upon the testimony of Mr. Hoffman. Mr. Hoffman did not settle the account or make any examination of the books, plant, or inventory. What he said was predicated upon the report of an investigator who was not called. A careful examination of Mr. Hoffman's testimony, which was given without objection, reveals that he appears to be speculating as to what factors led the Commonwealth's officers to arrive at their conclusion of valuation. In speaking of the value of inventory he said:

"In the absence of information to the contrary, the taxing officer evidently considered that it is a case of more than cost or market, whichever is less . . ."

This can mean only that in Mr. Hoffman's opinion the taxing officer acted upon that basis. However, the person who settled the account was not called so to testify. Moreover, we have been referred to no place in the testimony where there is any evidence to the effect that the inventory was carried on the appellant's

books at cost or market price, whichever was less. We cannot conclude, therefore, that there was any impropriety in taking $329,000 as the actual value of the inventory.

In attempting to reach some conclusion as to the actual value of plaintiff's capital stock, and bearing in mind the past record of earnings and dividends, we direct attention to the following factors:

1. Actual value of assets. . $626,000
   Less liabilities . . . . . . . .   69,000

   Net worth . . . . . . .         $537,000
2. Average earning from 1932 to 1936, inclusive, $21,183, capitalized at 10% . . . . . . . . . . . . .      211,837
3. 1936 dividends, capitalized at 10% . . . . . . . . . . . . . . . . . . . . .      940,000
4. 1936 dividends, capitalized at 15% . . . . . . . . . . . . . . . . . . . . .      626,000
5. Average dividends, 1932-1936, $40,000, capitalized at 8% . . . .      500,000

   Total . . . . . . . . . . . . . . . . . . .   $2,814,837
   Average . . . . . . . . . . . . . . . . . .   $562,967

We think that the above suggestions for possible bases of valuation treat the plaintiff very liberally and, in view of the economic conditions prevailing in 1936, offer valuable aid in determining the actual value of its capital stock.

Bearing in mind all the requirements of law relating to valuation, the Act of June 1, 1889, P. L. 420, sec. 20, as amended, 72 PS §1902, and the fact that the valuation of capital stock is not a matter of strict formula but of common sense and practical everyday business experience (Commonwealth v. Pennsylvania R. R. Co., 297 Pa. 308, 317), we conclude that the actual value of plaintiff's capital stock for the year 1936 was $600,000.

The second question relates to imported wool. Appellant is engaged in the business of manufacturing woolen carpet yarns. For this purpose it uses imported wool. During the year 1936 the company had in bonded warehouses imported wool with an average value of $168,555, and in its factory imported wool with an average value of $39,834. The total of these two items, $208,389, was included in the numerator of the allocation fraction in computing the tax. Appellant contends that the value of the imported wool should be excluded. This is on the theory that the inclusion of the wool violates article I, sec. 10, par. 2, of the United States Constitution, prohibiting States from laying imposts or duties on imports, and article I, sec. 8, par. 3, giving Congress the right to regulate interstate and foreign trade.

The Commonwealth admits that a capital stock tax is a property tax. We are, therefore, obliged to determine whether the present settlement violates the Federal Constitution in either of the above respects.

The testimony discloses that, by the Tariff Act of 1930, wool may be imported, conditionally duty free, provided it is used to manufacture floor coverings. There are two methods by which appellant gets such wool. The first is by direct application to the customs authorities for withdrawal of the wool. The second is by means of a transfer certificate from an importer. In both instances the wool is taken out on bond. The wool is not duty free unless within three years it is used to manufacture floor coverings. If not so used, the bondsman is liable for the duty. When wool or yarn is sold, the bond of the purchaser is substituted for that of the vendor.

All of the wool here in question was in the original packages and held by appellant under bond, some in its own factory and some in bonded warehouses. A bonded warehouse is any public warehouse under Government control.

The Treasury Department has issued customs regulations pertaining to such wool. While they have not been offered in evidence, they have been quoted extensively in plaintiff's brief. These regulations (art. ,491) permit the importation of wool under bond, in an amount to be fixed by the Secretary of the Treasury. If within three years the wool is used in the manufacture of specified articles, including floor covering, as specified by the act of Congress, the duties shall be remitted or refunded. Article 492 provides that such wool may be released immediately under bond or remain in a bonded warehouse until withdrawn in accordance with law. Article 493 requires that a bond be given by every dealer, manipulator, or manufacturer through whose hands the wool passes until its manufacture into the enumerated articles. Other articles of the regulations require a full and complete accounting for every ounce of the wool. Article 942 states that imported goods in bonded warehouses are exempt from taxation under the general laws of the several States.

The Tariff Act of June 17, 1930, 46 Stat. at L. 590, as amended, 19 U. S. C. § 1001, par. 1101(a), provides for the importation of wool under bond, duty free, in the event of manufacture into floor coverings. It also authorizes the Secretary of the Treasury to promulgate regulations. In McGoldrick, etc., v. Gulf Oil Corp., 309 U. S. 414, the Supreme Court considered article 942 of the Customs Regulations of 1931, with which we are here concerned. It stated that the same provision occurred in the Customs Regulations of 1915 and 1923. The court held (pp. 426, 428) :

"They were thus in force when the Tariff Act of 1930 was adopted and were incorporated by reference. . . .

"Customs regulations to insure the devotion of the imports to the intended use are likewise within the Congressional power since such regulations are not only necessary or appropriate to protect the revenue, but are means to the desired end, the regulation of foreign com-

merce by insuring that the particular class of exempted imports are used for the purposes for which the exemption is allowed."

It would, therefore, appear that Congress itself provided that "merchandise in bonded warehouse is not subject to levy, attachment or other process of a State court". . . and that "imported goods in bonded warehouse are exempt from taxation under the general laws of the several States". We think, also, that the same would be true with reference to the wool in a factory under bond.

The McGoldrick case had to do with a situation very similar to that which we are considering. There the defendant manufactured fuel oil from imported crude oil under bond in its own plant. It sold the oil as ship stores in foreign commerce. The act provided that when so manufactured and sold there was an exemption from duty. The City of New York, in effect, taxed the sale of such oil, holding the vendor liable for the tax. The court, after carefully considering the several statutes and regulations involved, among which were the Tariff Act of 1930 and Customs Regulations of 1931, concluded as follows (p. 428) : :

". . . Congress provided for the segregation of the imported merchandise from the mass of goods within the state, prescribed the procedure to insure its use for the intended purpose, and by reference confirmed and adopted customs regulations prescribing that the merchandise, while in bonded warehouse, should be free from state taxation . . . The Congressional regulation, read in the light of its purpose, is tantamount to a declaration that in order to accomplish constitutionally permissible ends, the imported merchandise shall not become a part of the common mass of taxable property within the state, pending its disposition as ships' stores and shall not become subject to the state taxing power. The customs regulation prescribing the ex-

emption from state taxation, when applied to the facts of the present case, states only what is implicit in the Congressional regulation of commerce presently involved. The state tax in the circumstances must fail as an infringement of the Congressional regulation of the commerce."

Paraphrasing this language, it may be stated: "The Congressional regulation, read in the light of its purpose, is tantamount to a declaration that in order to accomplish constitutionally permissible ends the imported wool shall not become a part of the common mass of taxable property within the State, pending its disposition as floor coverings and shall not become subject to the State taxing power."

We think that this would be true by virtue of the provisions of the Tariff Act of 1930, even though the customs regulations were not incorporated therein by way of reference.

It is our conclusion that the value of the wool in question should be excluded from the numerator of the allocation fraction. This is in harmony with the decision in Commonwealth v. J. N. Lambert Co., 46 Dauph. 234, 235, where this court stated:

"The appellants contend that the vanilla beans so imported and remaining in bond in their original packages are not subject to taxation, owing to the provisions of Article 1, Section 10, Paragraph 2 of the Federal Constitution. With this contention we agree, *as likewise does the Commonwealth*." (Italics supplied.)

This was a capital stock tax case. Our opinion in Commonwealth v. Bayuk Cigars, Inc., 50 Dauph. 243, is not in conflict, because there we were dealing with a privilege tax and not a property tax.

We are not here deciding whether including the value of the wool in the assets would violate article I, sec. 10, par. 2, of the Constitution of the United States. Our reasons for not so doing are that in the case of McGoldrick, etc., v. Gulf Oil Corp., supra, from

which we have quoted above, the Supreme Court granted the certiorari upon a petition which challenged the several grounds which were the basis of the decision in the New York Court of Appeals. These grounds were three, violation of article I, sec. 8, par. 3, article I, sec. 10, par. 2, and article VI, par. 2. The Supreme Court, as we interpret its decision, decided that the act there involved violated the commerce clause, article I, sec. 8, par. 3, but said nothing about article I, sec. 10, par. 2, relating to duties. We prefer, therefore, to follow their example.

In view of our determination, the formula of the tax should be:

$$\frac{365,202}{617,303} \times 600,000 = \$354,965.40$$

We have acted upon the requests of both parties for findings of fact and conclusions of law and direct that they be filed of record. In some instances we have neither affirmed nor refused said requests. This is because we deemed them irrelevant or unnecessary. In addition, we make the following

*Conclusions of law*

1. The actual value of appellant's capital stock for the year 1936 is $600,000.

2. The effect of the Tariff Act of 1930 is to prohibit the taxation by the Commonwealth of Pennsylvania of imported wool held by appellant under bond.

3. Inclusion of the value of said imported wool in the numerator of the allocation fraction used in settling the tax would impose a tax on said wool.

4. The inclusion of the value of said wool in the settlement formula violates article I, sec. 8, par. 3, of the Constitution of the United States by attempting to regulate foreign commerce.

5. The capital stock tax of appellant for the year 1936 is:

$$\frac{365,202}{617,303} \times 600,000 \ldots\ldots\ldots\ \$354,905.40$$

Tax at 5 mills . . . . . . . . . . . . . . $ 1,774.83
Amount of tax paid . . . . . . . . . . $ 3,252.16
Credit due appellant . . . . . . . . . $ 1,477.33

### *Decree nisi*

And now, to wit, May 25, 1942, judgment is hereby directed to be entered in favor of appellant and against the Commonwealth in the sum of $1,477.33, with direction that the Department of Revenue enter a credit to the account of the defendant for this amount, unless exceptions hereto be filed within the time limited by law.

The prothonotary is directed to notify the parties or their counsel of this decree forthwith.